J-S22040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NICOLE JANISE JONES :
:
Appellant : No. 636 MDA 2018

Appeal from the Judgment of Sentence January 24, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006546-2016

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JUNE 04, 2019**

Nicole Janise Jones (Jones) appeals from the judgment of sentence of

three to 23 months' imprisonment and six months of probation imposed by

the Court of Common Pleas of York County (trial court) following her conviction

for Forgery and Bad Checks.  We affirm.

We take the following relevant facts and procedural history from the trial

court's November 2, 2018 trial court opinion as well as our independent review

of the record.  This case involves Jones cashing a fraudulent check.  On April

11, 2016, Jones opened an account with Fulton Bank at its Westgate branch

by depositing $25 in cash.  At some point that evening, Jones attempted to

make a mobile deposit on her cell phone in the amount of $998.23.  The next

day, Jones arrived at the York branch and attempted to withdraw $798.  Since

Jones established her account the previous day, a three-to-seven day hold on

_____

*   Retired Senior Judge assigned to the Superior Court.

her account was in place. When told her request was denied, Jones said she was going back to the Westgate branch to complete the transaction.[1] That branch permitted her to withdraw $200.

At trial, Mandi Streavig (Streavig), an assistant branch manager at the York location, testified that the request was suspicious as banks "see a lot of fraud with mobile deposit." N.T., 11/14-15/17, at 81. Furthermore, the bank was suspicious of the deposited check since its sequence number was "123457." Streavig testified that when "we finally had the time to call [the Westgate branch] and give a heads-up, she had already been in there and made the transaction." *Id*. at 88-89. Streavig went on to state that she referred the matter to the authorities the same day when Officer Richard Kehler of the York City Police visited the York branch as part of his regular duties.

The Commonwealth submitted into evidence a copy of the deposited check, which was purportedly issued by Timothy Roderick and drawn from Brannen Bank, based out of Florida.[2] Jones was listed as the payee in typed

_____

[1] Streavig did not personally speak to Jones during this encounter.

[2] It is unclear if Jones made two separate deposits or simply presented the physical check at the second location when trying to make the withdrawal. When asked, Streavig, who was the only Fulton Bank employee called, said "I'm not really sure of that. She could have mobile deposited the check, which just means take a picture of it, and that she could have taken that same check to the branch and deposited it again over the counter." N.T., 11/14-15/17, at 83.

letters.[3]  Officer Kehler contacted Brannen Bank and learned that Timothy Roderick did not exist.  Brannen Bank informed him that there were approximately 1,500 incidents of this same check being used throughout the world.

Jones was convicted by a jury of both Forgery and Bad Checks and sentenced as previously stated.  Her post-sentence motions were denied and she timely appealed.  Jones raises two issues both of which concern the sufficiency of the evidence.[4]

We first address the contention that there was not sufficient evidence to support the Forgery conviction, which is defined by statute as:

> **(a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is

---

[3] The transcript does not indicate if the back of the check was signed.  The Commonwealth introduced a copy of the front of the check as an exhibit but not the back.

[4] Specifically, Jones raises the following issues:

> The Commonwealth failed to prove Appellant intended to defraud when Appellant deposited a fraudulent check into her own bank account.  The Commonwealth's evidence was insufficient to demonstrate Appellant knew the check was fraudulent in order to sustain a conviction for Forgery.
>
> The Commonwealth failed to prove Appellant intended to defraud and had knowledge that the check Appellant deposited would not be honored.  The Commonwealth's evidence was insufficient to demonstrate Appellant knew the check was fraudulent in order to sustain a conviction for Bad Checks.

Jones' Brief at 4.

facilitating a fraud or injury to be perpetrated by anyone, the actor:

> (1) alters any writing of another without his authority;

> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S. § 4101.

The Commonwealth charged Jones with violating § 4101(a)(3) and she does not dispute that the check was actually forged in a manner specified in paragraphs (1) or (2). Her argument is that the Commonwealth did not offer sufficient evidence to establish that she knew the check was a forgery as required by (a)(3).[5]

---

[5] "Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). "In conducting our inquiry, we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt." ***Id.*** (citation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence." ***Id.*** (citation omitted).

Jones relies on ***Commonwealth v. Gibson***, 416 A.2d 543 (Pa. Super. 1979), where we discharged a conviction under (a)(3) on sufficiency grounds. Gibson entered a bank and presented a check for $150, which was made payable to cash and endorsed by Elsworth Kutz. Kutz testified that he did not write the check. Additionally, after receiving a call from his bank, he noticed that some checks had gone missing from his home. We explained why that evidence was insufficient to establish Gibson knew the check was forged:

> Kutz's testimony that he had not written the check and that some of his checks were missing does not prove that appellant signed the check or that he knew it was forged. The evidence just as easily supports an inference that appellant found the check or received it from someone else. Nor do the circumstances show guilt. Appellant did not have any previous connection with Kutz through which he might have obtained the check. He did not purport to be Kutz. He did not leave the bank when asked for identification or engage in any other suspicious behavior. Thus, his conviction rests on the fact, standing alone, that he sought to cash a check signed in Kutz's name but which Kutz had not written. Appellant's possession of the check, in itself, does not justify a conclusion that he forged the check or knew that it was forged.

*Id*. at 544–45.

***Gibson*** holds that the mere possession and/or cashing of an actually forged check does not establish, by itself, that the actor knew the check was forged in a manner specified by statute. Additional circumstantial evidence is needed to make out the charge. Jones asserts that such evidence is similarly absent here because there is no evidence as to how Jones acquired the check. Additionally, the check was not an obvious forgery as Streavig had to compare the forged check against a genuine Brannen Bank check in order to spot

minute differences, *e.g.,* discrepancies in the font and borders. Jones contends that we should conclude, like **Gibson**, that the evidence equally supports an inference that Jones was given the check by someone else.

But while **Gibson** holds that the forged nature of a check does not *per se* establish the passer knows the check is forged, it does not follow that the forged nature of a check is simply irrelevant. That point is demonstrated by a case issued following submission of briefs in this matter, **Commonwealth v. Green**, 203 A.3d 250 (Pa. Super. 2019) (*en banc*), distinguishing **Gibson**. There, St. Moritz Labor Services, a temporary staffing agency, discovered that 18 fraudulent checks had been drawn on its payroll account. The company president testified that the forgeries were quite similar to genuine checks. Green, who had no connection to St. Moritz, cashed one of the fraudulent checks. The check listed Green as the payee and he signed his name on the back of the check. When contacted by a police officer, Green remarked, "I only did it once," and claimed that he received the check in the mail.

Green argued that **Gibson** required discharge because all the Commonwealth established was his possession of a forged check that he knew he was not supposed to have. We distinguished **Gibson** for these reasons:

> The present case, however, does not involve mere possession of a forged personal check made payable to cash. Rather, the evidence showed the check was made payable to Green (and included Green's address); the check appeared to be drawn from St. Moritz's commercial account; the check was purportedly a payroll check of St. Moritz Labor Services; Green never worked for St. Moritz and had no relationship with the company; St. Moritz did not owe Green any money; Green told police that there was

no reason why he would have been given a check by St. Moritz; and Green told police that with regard to the St. Moritz check that he cashed, "he only did it once." N.T., 6/20/2016 at 27.

Furthermore, *how* Green came into possession of the check, and *what* he knew of St. Moritz Labor Services are immaterial. Because Green admittedly never worked for St. Moritz Labor Services and had no reason to receive a check from St. Moritz, the circumstantial evidence and reasonable inferences therefrom establish Green knew that St. Moritz would not have his name and address for payroll or other payment purposes, and knew that he would not be a payee on a genuine St. Moritz Labor Services check for nearly $500.00.

203 A.3d at 255 (emphases in original).

This case is more like **Green** than **Gibson** because there is other evidence to support the conviction beyond Jones merely cashing a forged check. Jones opened an account at the bank's Westgate branch by depositing $25, then that same evening attempted to deposit a forged $998.23 check. The next day, she attempted to withdraw $798 from a separate branch and, when refused, went back to the Westgate branch to withdraw $200.[6] Unlike **Gibson**, where the check was made out to cash, the forged check here was made out to Nicole Jones, like in **Green**. Moreover, the check bears the odd sequence number "123457." This creates an inference that Jones knew the

_____

[6] Jones maintains that her announcement that she was going to the Westgate branch is not relevant because she would not proclaim her intent to commit a crime elsewhere. We agree that this fact alone would not establish her guilt, but we find that it is a relevant piece of circumstantial evidence in light of the other circumstances. The jury was free to attach evidentiary significance to that behavior as it saw fit in its fact-finding role.

drawer of the check did not exist. When combined with the fact that this forged check was used in over 1,500 fraudulent transactions, the jury could find beyond a reasonable doubt that Jones knew the check was a forgery.[7]

The second issue concerns the sufficiency of the evidence for the Bad Checks conviction, which states, "A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." 18 Pa.C.S. § 4105(a)(1). Jones' argument rests on her prior challenge: "Much like in the argument made previously, the Commonwealth has failed to prove Jones knew the check was fake. Thus, if there was insufficient evidence to prove she knew the check was fake, there was also insufficient evidence [for Bad Checks]." Jones' Brief at 15. Since we have determined that the Commonwealth established by sufficient circumstantial evidence that Jones knew the check was a forgery, this challenge likewise fails.

Judgment of sentence affirmed.

---

[7] The statute requires an "intent to defraud or injure," in addition to proving, under (a)(3), that the actor "utter[ed] any writing which he knows to be forged." For purposes of this inquiry, the analysis is essentially identical despite arguable differences between knowing conduct versus intentional conduct for purposes of this crime. *See* 18 Pa.C.S. § 302(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/04/2019